FILED

2015 OCT 19 PM 2:44

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ ACC DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE LEROME SMITH,<br><br>Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No.: 14-cv-2301 BEN<br>11-cr-471 BEN<br><br>**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE** |

Before this Court is a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, filed by Maurice Lerome Smith. (Crim. Docket No. 72.)

## BACKGROUND

Smith was convicted of sex trafficking of children by force, fraud, or coercion and felon in possession of a firearm. M.S., a minor, was the primary witness against Smith at trial.

Smith claims he was denied his Sixth Amendment right to effective assistance of counsel when his trial counsel failed to adequately investigate whether: (1) Smith was aware M.S. was a minor; and (2) whether Smith used force, fraud, and coercion to cause M.S. to engage in sex trafficking. Smith contends his trial counsel should have called several witnesses and collected other evidence to contradict M.S.'s testimony.

## LEGAL STANDARD

Under section 2255, a movant is entitled to relief if the sentence: (1) was imposed in violation of the Constitution or the laws of the United States; (2) was given by a court without jurisdiction to do so; (3) was in excess of the maximum sentence authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Speelman*, 431 F.3d 1226, 1230 n.2 (9th Cir. 2005). Under the Sixth Amendment, a criminal defendant is guaranteed the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). Thus, ineffective assistance of counsel is a ground for section 2255 relief. *See Massaro v. United States*, 582 U.S. 500, 502 (2003).

A claim for ineffective assistance of counsel is established by showing that (1) counsel's performance was deficient and (2) the movant was prejudiced as a result of that deficient performance. *Strickland*, 466 U.S. at 687. To establish deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Counsel's representation must fall below an objective standard of reasonableness. *Id.* at 687-88. There is a strong presumption that counsel's conduct falls within the "wide range of reasonable professional assistance." *Id.* at 689.

To establish prejudice, a movant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The movant has the burden of showing that "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694-96. Moreover, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," a court may examine the prejudice component without determining whether counsel's performance was deficient. *Id.* at 697.

## DISCUSSION

Smith argues that his trial counsel, Jonathan Jordan, was ineffective because Jordan failed to obtain certain evidence or locate particular witnesses whose testimony could have impeached M.S.'s testimony.

14cv2301/11cr471

### I. Counsel's Performance

Smith argues that his trial counsel should have called the following four witnesses to attack M.S.'s credibility: Bonnie Higgins, Latricia Van Zant, Pamela Holmes, and Michelle McKurtis. Ms. Higgins had a child by Smith, and it appears that Ms. Higgins' sister has custody of the child. Smith claims that Ms. Higgins's testimony would have shown that M.S. had a motive to set up Smith because of M.S.'s close relationship with Ms. Higgin's sister. Smith asserts that Ms. Van Zant would have testified that she scheduled escort services for Smith and acted as M.S.'s replacement. Smith contends that Van Zant's testimony would show that M.S. testified against Defendant to get revenge. Smith maintains that Ms. Holmes' testimony would have shown that Defendant did not force M.S. into prostitution because Holmes once learned that M.S. was underage and offered to call the police for her. Finally, Smith states that Ms. McKurtis' testimony would have contradicted M.S.'s story that the Defendant punched Ms. McKurtis in the face.

Smith also argues that Jordan should have obtained photographs of M.S. to show that M.S. never displayed signs of being beaten. Smith claims that Jordan should have obtained the IP address information from the computer that was used to post the prostitution advertisements to show that M.S. paid for advertisements herself and that they were posted from her computer.

In opposition, Smith's trial counsel, Jordan, filed a declaration stating that he does not recall whether Smith informed him of Ms. Van Zant, or that M.S. was jealous of anyone. Jordan attests that he was not informed of Ms. McKurtis' last name, but even if he had known it and could have reached her, he believed her testimony would not help Smith's defense because it would show that Smith had multiple women working for him as prostitutes. Jordan did interview witnesses in preparation for trial, including Ms. Holmes. But, Jordan decided that Ms. Holmes' testimony would not be helpful because it would show that Smith was aware that M.S. was underage.

///

Jordan's actions in preparation for and during trial did not fall below the objective standard of reasonableness. The record indicates that Jordan considered the consequences of calling the witnesses Smith suggested and made strategic decisions not to call them, lest their testimony add fuel to the Government's case. Such decisions are part and parcel of effective representation. *See Strickland*, 466 U.S. at 691 (noting that an attorney's actions are typically based upon strategic decisions made as a result of the information provided by the defendant). Smith cannot overcome the strong presumption that his trial counsel performed effectively.

However, even if Jordan performed deficiently, Smith has not shown that he was prejudiced by Jordan's performance.

## II. **Prejudice**

In support of his motion, Smith submitted declarations by Pamela Holmes and a private investigator, George Newman. Ms. Holmes declared that she was aware M.S. was underage and offered to call the police. Mr. Newman stated that it was his opinion that trial counsel should have conducted his investigation differently. Attached to his traverse, Smith included his own declaration and that of Michelle McKurtis. Smith attests that he asked his trial counsel to contact Ms. Holmes, Ms. McKurtis, and Ms. Van Zant. Ms. McKurtis affirms that Smith posted advertisements online for her escort service, that she paid him to do so, that she thought M.S. was twenty-two years old, and that Ms. McKurtis was never assaulted by Smith.

At trial, the Government presented evidence by expert testimony that Smith's computer was used to post prostitution advertisements. The advertisements were paid for by Smith and displayed his name on the receipts. Detective Zaldivar testified that Smith rented multiple hotel and motel rooms around San Diego County. And, the hotel room where the victim, M.S., was arrested was rented in Smith's name. Sixteen cellular phones were found in Smith's apartment. The three cellphones that were found with M.S. on the day of her arrest were linked to the advertisements posted from the Smith's computer. In addition, the jury learned that M.S.'s DNA was found on Smith's belt,

which was also found in his apartment.

The Government also presented evidence of a phone call made by M.S. to Smith as part of the investigation. During that phone call, M.S. casually brought up the fact that she was under the age of eighteen. The jury listened to and made their own conclusions about Smith's response.

Jordan cross-examined each witness in an attempt to draw out some inconsistencies in M.S.'s testimony. In addition, he questioned why no evidence or photographs had been presented to show that M.S. had been beaten on any occasion.

Thus, even if Jordan had done everything that Smith now argues he should have done, it would not have changed the outcome of the trial. The jury made special findings that (1) "the defendant knew that force, fraud, or coercion would be used to cause [M.S.] to engage in a commercial sex act" and (2) that "the defendant knew, or was in reckless disregard, that [M.S.] had not attained the age of 18 years would be caused to engage in a commercial sex act"—only one of which was required for a guilty verdict. Smith's arguments that he was prejudiced by his trial counsel's failure to call the four witnesses or gather other evidence is speculative; and, an argument based upon speculation is insufficient to show prejudice. *See Anderson v. Johnson*, 182 F.3d 924, at *2 (9th Cir. 1999) (unpublished) (citing *Cooks v. Spalding*, 660 F.2d 738, 740 (9th Cir. 1981)). Although it is possible that the jury could have returned a "not guilty" verdict, it is not reasonably probable.

## CONCLUSION

Smith's Motion under 28 U.S.C. § 2255 is **DENIED**.

**IT IS SO ORDERED.**

Dated: October /6, 2015

Hon. Roger T. Benitez
United States District Judge